BROOK, COUNTY ASSESSOR *v.* WILSON, STATE AUDITOR.

[82 South. 74, Division B. No. 20781.]

1. TAXATION. *Assessment. Compensation of assessors.*
   Chapter 136, Laws 1918, amending sections 4299-4300-4301, Code 1906, providing for compensation for re-assessment in case of special assessments, is exclusive and chapter 193, Laws 1910, does not apply to a special assessment.

2. SAME.
   The statute did not contemplate that the compensation for making extra assessments should be paid out of the state treasury and the amount thereof be determined by the board of supervisors, for unless the legislature conferred in plain language the power upon the board of supervisors, to make an allowance out of the state treasury, the court could not imply such authority.

3. SAME.
   It was contemplated that the compensation for making such extra assessments should be paid out of the county treasury, and it would be for the board to determine in view of all the facts what was reasonable compensation for making such assessment, limited only by the amount the assessor would receive for a regular assessment.

APPEAL from the circuit court of Hinds county. .
HON. W. H. POTTER, Judge.

Mandamus by H. Q. Brook, Tax Assessor of Monroe county, against R. E. Wilson, Auditor of Public Accounts. From a judgment of the circuit court sustaining a demurrer to the petition and dismissing it, complainant appeals.

The facts are fully stated in the opinion of the court.

*Leftwich & Tubb,* for appellant.

Giving reasons why the county should pay for a reassessment might appeal to the legislature to change the law compensating assessors as provided for by chapter 193 of the Laws of 1910, but we submit that they fail to lead to the conclusion that the compensation of an assessor for a reassessment should be paid by the county any more than that the compensation for the regular assessment should be paid by the county. As we pointed out in our opening brief, a reassessment of lands is not ordered necessarily because of the fault of the assessor. Such a case is provided for by section 4294 of the Code. The reassessment in the instant case as shown by the petition for mandamus asserts and the demurrer admits, and if this be so all the arguments in the brief for appellee failed. As we demonstrated before, the assessment of lands begins with the assessor, passes through the hands of the board of supervisors and is finally approved or rejected by the auditor of public accounts and tax commission it is in no case the product of a single official, and as we have shown it is a state function.

It seems to us it would be utterly illogical to lay the blame to the assessor, when the assessment of the preceding year was approved by the board of supervisors, by the state auditor and by the state tax commission. The latter body in order to equalize the assess-

ment and values placed on lands throughout the state required an increase in assessment of the lands of Monroe county, and in making this increase hastily as it has to be done, a reassessment of lands the following year was deemed proper, to be made by the board of supervisors, not solely for the county's benefit, but the benefit of the state revenues generally, and as a matter of justice and right. The innitative in the reassessment is no more with the board than with the regular assessment. The only difference is that the regular assessment is made at stated times all over the state and a reassessment is made at the time fixed by the board. The arguments of counsel for appellee must fall to the ground in the instant case because his demurrer admits the averments of the petition showing why a reassessment was made.

On page 4 of his brief the attorney-general uses the following language: ''If the board should find that the expense incurred in making the reassessment should be inconsiderable as compared to the benefits to the county arising therefrom, the discretion of the board of supervisors could properly be exercised in ordering this reassessment, but the test at all times is, the comparative benefits to the county. The assessor is elected by the voters of the county and he has the privilege of appointing his own deputies to assist him in his work, by far the larger part of the tax arising from his assessment goes to the county and its subdivisions, and it is but consonant with justice that for any inefficiency in this officer's work necessitating a reassessment, the county alone should bear the burden.'' This argument applies just as potentially to the compensation of the assessor for the regular assessment and it might appeal to the legislature for a change in the general law, but it is certainly not conclusive here. We submit that if the legislature by section 4300 had

intended that the county alone should pay the assessor it would have said so. The language plainly means that the board of supervisors may allow him as much, payable out of the county treasury, not more than it could allow him in a regular assessment.

The attorney-general appeals on the last page of his brief, to the administrative interpretation of the statutes in question and asserts that no assessor has ever been paid by the state for making a reassessment. We suggested a better test, if such a test was worth anything in our former brief; that wherever the legislature has ordered a reassessment of lands for any county, as has been the case several times, it provides for the payment of the reassessment by the state. We submit that there can be no concensus of the administrative officers on the subject, because the state auditor shows no precedent where his opinion or the attorney-general's opinion has ever been asked on the question. The state auditor was greatly in doubt and the attorney-general was in doubt and hence the whole matter comes here. The only point on this observation is that there has been no administrative interpretation of the statute that can be called such. It seems to have been common for counties to have a reassessment of lands to call on the legislature to pass a bill and when the legislature did so the state paid for it. Under our constitution when the matter came to a test this special act held unconstitutional and a general law had to be passed on the subject. If the legislature in passing the general law had meant for the county to pay for the reassessment of lands, it certainly would have said so after using the general language, that the assessor must comply in all respects with the law governing general assessments. See last sentence of section 4294. There seems to be no precedent, no interpretation of the statutes to point to. If any county has ever

paid for a reassessment we submit that it performed a gratitutious service to the state and affords no precedence here.

It will be observed that section 4300 as brought forward in chapter 136, Acts of 1918, provides: "That upon the return and approval by the board of such land roll, the board may allow the assessor or "person" appointed by the board to make such reassessment, such compensation as they may deem proper," etc. When it is seen that his re-assessment chapter is intended to be used, also where the assessor himself is incompetent and another person is appointed to make it certainly the argument used by the attorney-general at the bottom of page three (3) and on page four (4) could not apply to the "person appointed, etc." He could not be required to make new assessment for nothing, even if the old assessor might be. This "person appointed" would certainly have to be paid at all events. Certainly as to this person appointed the state must be called on to pay for as for any other assessment for it is not presumed to have paid for the rejected assessment. The interpretation of the compensation features to be correct must be such as to apply to all contingencies.

*Earl N. Floyd,* assistant attorney-general, for the State.

This is an appeal from a judgment of the circuit court for Hinds county sustaining the appellee's demurrer to a petition seeking to compel him, as state auditor, to issue a warrant in favor of the appellant for the sum of one thousand, six hundred and twenty-nine dollars and three cents.

The appellant was the tax assessor of Monroe county and he alleges that the above amount was due him as compensation for making a re-assessment of the said

county, pursuant to an order of the board of supervisors, which recited that the said re-assessment was advisable in order to correct the confusion and inequalities in the land assessment caused by certain horizontal increases made by the state tax commission. The contention of the appellant is that the state should pay for the re-assessment as provided by chapter 193, Laws of 1919, section 1877, Hemingway's Code.

The demurrer filed by the auditor of public accounts takes issue with this contention and alleges that the county rather than the state, should alone pay for this reassessment and that there are no funds in the treasury to be drawn on for this purpose.

The court will observe that under our statutes a reassessment of the lands of a county may be made: First: Under section 4294, Code of 1906, when the board of supervisors finds that the assessor is incapable, or that his assessment is so imperfect that it ought not to be approved. Under this statute the board appoints another person to perform the duties of the assessor and allows to the said person the compensation of the assessor for like service.

Second: Under sections 4299 to 4301, inclusive, the board of supervisors may order a reassessment when in their opinion the assessment as made is "so erroneous and imperfect as to cause inconvenience, unnecessary trouble, or entail financial loss to the taxpayers of the county," and when such reassessment shall have been made it shall be in lieu of the erroneous assessment. Reassessments made under these statutes are made by the assessor and must comply in all respects with the law governing general assessments.

Under chapter 136, Laws of 1918, the legislature acting on the theory that the above statute did not authorize a re-assessment except in the year of a general assessment, amended these statutes so as to permit of a reassessment of lands either in the year of

the general election or any other year. But,. as a con-
dition to the ordering of a reassessment, the 1918
Act requires the same finding of facts, to wit, that
the assessment is "so erroneous and imperfect as to
cause inconvenience, unnecessary trouble or entail
financial loss to the taxpayers of the county."

It is to be noted here that sections 4299 to 4301,
inclusive, Code of 1906, had their origin in chapter 31,
Laws of 1898, and underwent some slight evolution
when Codified in 1906, but were still recognized as an
integral scheme of reassessment when amended by
chapter 136, Laws of 1918. The point I wish to illus-
trate is this: These statutes were designed to meet a
different situation from the existing statutes under
which a reassessment may be made, and carry with
them a complete scheme, including the compensation
of the assessor therefor, the said compensation as pro-
vided by section 4300, Code of 1906, and brought
forward unamended in the 1918 Act, being as follows:
"Upon the return and approval by the board of such
land-roll the board may allow the assessor or person
appointed by the board to make such reassessment,
such compensation as they may deem proper, not to
exceed the amount of compensation for a regular as-
sessment. The clerk shall receive the same fee for
making copies of said roll as is allowed for making
copies of a regular assessment."

It is appellee's contention that this provision limits
the source of compensation to the county and also
limits the same to such an amount as the board "may
deem proper, not to exceed the amount of compensation
for a regular assessment." In other words, the board
may allow the assessor for this extra work nothing at
all, or else it may compensate him to the amount re-
ceived for a regular assessment. The discretion of
the board is to be exercised in this regard, and, as I
view the history and purpose of the statute, the legis-

lature clearly intended that the board should pay this compensation from the county treasury alone, the amount varying with the circumstances necessitating the reassessment.

If the legislature intended that the state should pay any part of the assessor's compensation, the act would merely have provided that his compensation should be the same as for making a regular assessment, and the board of supervisors would not have been charged with the discretion of paying him what they deem his services to be worth, under the circumstances. The provision relative to the compensation having been included as a part of this scheme for securing a reassessment, it is manifest that the legislature intended that it should be the sole basis of compensation.

The legislature, at each session, passes an appropriation bill to pay the commissions due the assessors, as for instance, chapter 43, Laws of 1918, which appropriates one hundred and sixty thousand dollars for that purpose. The amount usually appropriated to pay for the regular assessment is barely sufficient, and, in 1918, the legislature was called on to pass an appropriation bill for four thousand, two hundred and seventy-five dollars and twenty-six cents to make up a deficit in the appropriation made in the year 1916 (Chapter 44, Laws of 1918).

In so far as I have been able to ascertain, this question has never been passed upon by this court before, but the administrative interpretation of the statutes in question has always been in accord with appellee's contention, as the records of the state auditor's office do not show that any assessor has ever been paid by the state for making a reassessment.

The question involved is of considerable importance to the state, because, under 1918 act, permitting reassessment at any time there will be frequent demands upon the state for large sums of money due the tax

assessors for making reassessments. It may well be admitted that as a matter of simple justice the tax assessor should, where a new assessment is ordered without any fault of his own in making the original, have ample compensation for his work, but the legislature has provided that the counties should bear this expense since the board of supervisors is the sole judge of the advisability of ordering the reassessment. If the assessor's rolls are confusing or imperfect and were, nevertheless, approved by the board of supervisors it is but just that the counties and not the state, should stand the expense incurred by the acts of their officials whom they have had the privilege and responsibility of placing in office.

I respectfully submit that the learned court below was correct and that the judgment sustaining the demurrer of the appellee herein should be affirmed.

Etheridge, J., delivered the opinion of the court.

H. Q. Brook, tax assessor of Monroe county, filed his application with R. E. Wilson, auditor of public accounts, for making a special assessment of lands in Monroe county, contending that under chapter 193, Laws of 1910 (section 1877, Hemingway's Code), he was entitled to pay from the state treasury for making said special assessment. The auditor declined to allow the claim, and petition for mandamus was filed in the circuit court of Hinds county. The petition was demurred to, and the demurrer was sustained, and the petition was dismissed in the circuit court, from which judgment this appeal is prosecuted.

Chapter 136, Laws of 1918, amending sections 4299, 4300, and 4301 of the Code of 1906, provides for cases in which a reassessment may be had, and section 4300, as amended in said act, provides for the compensation for making special assessment and reads as follows:

"4300. *Compensation.*—(Laws 1898, chapter 31.) Upon the return and approval by the board of such land roll the board may allow the assessor or person appointed by the board to make such reassessment, such compensation as they may deem proper, not to exceed the amount of compensation for a regular assessment. The clerk shall receive the same fee for making copies of said roll as is allowed for making copies of a regular assessment."

It is insisted by the appellant that this allowance by the board of supervisors is in addition to, and independent of, chapter 193, Laws of 1910 (section 1877, Hemingway's Code), and that under this chapter 136, Laws of 1918, the board will allow or not allow any compensation according to its discretion and judgment from the county treasury.

From a careful study of the provisions of chapter 136, Laws of 1918, we are of the opinion that the provision for compensation for reassessment in case of special assessment is exclusive, and that chapter 193, Laws of 1910, does not apply to a special assessment ordered by the board. In our opinion it was not contemplated that the compensation for making the extra assessment should be paid out of the state treasury and the amount thereof to be determined by the board of supervisors. Unless the legislature conferred in plain language the power upon the board of supervisors to make an allowance out of the state treasury, we could not imply such authority. It was contemplated that the compensation for making such extra assessment should be paid out of the county treasury, and it would be for the board to determine, in view of all the facts, what was reasonable compensation for making such assessment, limited only by the amount the assessor would receive for a regular assessment. This view is strengthened by the concluding sentence of section 4300, Code of 1906, as amended, providing for the

clerk's compensation for making copies of the roll, in which it is provided that he shall receive the same fee as for making the regular assessment. The making of new assessments is somewhat disturbing to general uniformity of taxation, and it was intended that, when made, the county should bear the full expense of making the same. If chapter 193, Laws of 1910, applied, the assessor would receive full compensation for making an assessment, even though it was not necessary to make an entire revision of the previous assessment.

The court below having reached the same conclusion, the judgment is affirmed.

*Affirmed.*